**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PATRICIA HALL JAYNES & THE HR
SOURCE, INC.,

         *Plaintiffs,*

v.

JOHN WAYMAN HENRY & CONSORTIUM
ELITE, INC.,

         *Defendants.*

Civil Action No. 21-03098

**OPINION**

**John Michael Vazquez, U.S.D.J.**

      This matter comes before the Court on the motion of Defendants John Wayman Henry and Consortium Elite, Inc. ("Consortium") (collectively "Defendants") to dismiss portions of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 7. The Court has considered the submissions in support of and opposed to the motion,[1] and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1(b). For the reasons given herein, Defendants' motion is **GRANTED**.

## I.    BACKGROUND[2]

      Plaintiff Patricia Hall Jaynes owns, at least in part, a Maryland corporation named The HR Source, Inc. ("HR"). *See* D.E. 1 ("Compl.") ¶¶ 2-3, 12. Defendant John Wayman Henry is the

---

[1] Defendants' brief in support of the motion, D.E. 7-2, will be referred to as "D. Br." Plaintiff's brief in opposition, D.E. 8, will be referred to as "Opp'n." Defendants' reply, D.E. 9, will be referred to as "D. Reply."

[2] These facts are drawn from Plaintiff's Complaint, D.E. 1. The Court accepts the Complaint's well-plead allegations as true for purposes of this motion. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). The Court also considers the exhibits attached to the Complaint. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

owner and operator of Consortium, a New York corporation.  *Id.* ¶ 5.  This case arises out of disputes regarding investments that the parties made in two properties.  *See id.* ¶¶ 9-28, 33-37; *id.* ¶¶ 29-32.

In November 2016, Defendants proposed to Plaintiffs that they invest in a New York rental property ("the New York Property").  *Id.* ¶ 29.  Defendants said that they needed $22,500 for an option to buy the property.  *Id.* ¶ 30.  In December 2016, Plaintiffs transferred that amount to Defendants.  *Id.*  Despite Plaintiffs' requests, Defendants did not provide Plaintiffs with documentation to prove that the money was used for the stated purpose.  *Id.* ¶ 31.  Plaintiffs demanded that Defendants return the money to no avail.  *Id.* ¶ 32.  Defendants have not disbursed any sums to Plaintiffs as to the New York Property.  *Id.*

In May 2017, Jaynes and Henry discussed investing jointly in a rental property in Atlanta, Georgia ("the Property").[3]  *Id.* ¶ 9.  Jaynes and Henry agreed to make their contributions through HR and Consortium.  *Id.* ¶ 12.  They organized their enterprise as a partnership with a 52/48 split of the profits and financial responsibility in favor of Defendants.  *Id.* ¶ 13.  Defendants were responsible for maintaining and administering the Property, were obligated to provide Plaintiffs with regular reports, and were required to pay Plaintiffs their share of the profits.  *Id.* ¶ 14.  Plaintiffs were to oversee the interior design of, and furnish, the Property.  *Id.*

Plaintiffs invested $300,000 in the Property in July 2017.  *Id.* ¶ 15.  Defendants never provided any profits to Plaintiffs.  *Id.* ¶ 16.  Defendants instead represented to Plaintiffs that the Property's expenses had increased, and that Defendants required further funds from Plaintiffs.  *Id.* ¶ 17.  Plaintiffs asked Defendants for an accounting of expenditures with supporting

---

[3] The parties also refer to the Property as "Robin Hood," *e.g.*, D.E. 1-1 ("Exhibit 1"), or "170 Robin Hood," *e.g.*, D.E. 1-2 ("Exhibit 2").  Both appear to be shorthand for the Property's address.  *See* Compl. ¶ 10 ("170 Robin Hood NE, Atlanta Georgia[.]").

documentation, but Defendants produced incomplete statements with incomplete documentation. *Id.* ¶¶ 18-19.

On February 14, 2020, Defendants sent Plaintiffs a financial statement, which is attached to the Complaint as Exhibit 3.  *Id.* ¶ 21; *see also* D.E. 1-3 ("Exhibit 3").  The statement listed Defendants' expenditures on the Property—including $336,121.57 spent on "Building Improvements" and $88,665.75 for "Professional Fees"—and showed that $119,755 was "Due to (From) Pat Hall Jaynes" for the period of January 2018 to December 2019.  *Id.* at 1-2.  Plaintiffs asked for documents corroborating the expenditures and Defendants sent them a link to a drop box that included several digital documents.  Compl. ¶¶ 23-24.

On April 27, 2020, Defendants sent Plaintiffs another financial statement, which is attached to the Complaint as Exhibit 4.  *Id.* ¶ 24; *see also* D.E. 1-4 ("Exhibit 4").  Defendants represented that Exhibit 4 was a "revised" version of Exhibit 3.  Compl. ¶ 24.  Exhibit 4 indicated that Defendants spent $668,020 on building improvements; $60,065.75 for professional fees; and that $25,829 was due from Jaynes.  Exhibit 4 at 1-2.  Plaintiffs again asked for documentation to support Defendants' expenditures, but Defendants did not provide any.  Compl. ¶ 26.

Beginning in July 2019, Defendants called the money from Plaintiffs a loan rather than an investment.  *Id.* ¶ 34.  Plaintiffs disputed that they had made a loan but demanded that Defendants repay any sums that Defendants considered to be loans.  *Id.* ¶¶ 35-36.  As of April of 2020, Plaintiffs had wired Defendants over $637,000.  *Id.* ¶ 20.  Defendants never provided any money to Plaintiffs.  *Id.* ¶ 28.

Plaintiffs filed the Complaint on February 22, 2021, attaching printouts of email correspondence between Jaynes and Henry along with financial statements on Consortium's letterhead that were provided to Jaynes.  D.E. 1-1; D.E. 1-2; D.E. 1-3; D.E. 1-4.  The Complaint

asserts four causes of action: fraud, breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing.  Compl. at 1; *id.* ¶¶ 38-59.  The first and second claims concern the Property.  *See id.* ¶¶ 39, 42, 47.  Plaintiffs premise their fraud claim on what they call the Defendants' "material misrepresentations … as to construction expenditures at the Property." *Id.* ¶ 39.  Plaintiffs further allege that "Defendants intentionally submitted to Plaintiffs a false financial statement, including false claims of construction expenditures[.]" *Id.* ¶ 42.  It is unclear whether the third claim is based on Defendants' conduct regarding both of the properties or just the Property.  *See id.* ¶ 53.  Count four appears to refer the Property.  *Compare id.* ¶ 56, *with id.* ¶ 47.

Defendants then filed the current motion, seeking to dismiss portions of the Complaint. D.E. 7.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]"  To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler*, 578 F.3d at 210-211.  A court "must accept all of the complaint's well-

pleaded facts as true." *Id.* at 210.  A court, however, does not credit labels, conclusions, and a formulaic recitation of the elements of a cause of action.  *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  A court may also rely on exhibits attached to the complaint.  *Sands*, 502 F.3d at 268.

### III.    ANALYSIS

Defendants argue that Jaynes lacks standing, that the Complaint fails to allege sufficient facts to pierce the corporate veil as to Henry, and that the fraud count is insufficiently pled.  The Court addresses each argument in turn, and notes that Plaintiffs' opposition is sparse.  The opposition brief consists of less than three substantive pages and does not have any legal citations.

#### A. Jaynes' Standing

Defendants argue that this Court should dismiss for lack of standing claims brought by Jaynes in her personal capacity.  D. Br. at 7.  Defendants reason that the principal of a corporation ordinarily lacks standing to sue personally for an injury suffered by the corporation.  *Id.*  Rather, the principal may only sue if she suffered a direct injury.  *Id.*  Plaintiffs respond by pointing to Exhibits 3 and 4, which show Jaynes' (as opposed to HR's) ownership, ownership percentage, contributions, and money due to or owing from the Property.  Opp'n at 2-3 (quoting Compl. ¶¶ 21-25; Exhibit 3; Exhibit 4).  Defendants note that the Complaint alleges that Jaynes acted on HR's behalf and that Exhibit 2 is an email sent by Jaynes regarding the Property in which Jaynes used HR's logo in her signature block.  D. Reply at 2.

Paragraph 12 of the Complaint states that "Plaintiff Jaynes and Defendant Henry agreed that contributions toward their respective investments in the Property would be made *through their respective companies*[.]"  Compl. ¶ 12 (emphasis added).  This allegation reflects that Jaynes and Henry entered into the relevant agreements through HR and Consortium.

In *Meade v. Kiddie Academy Domestic Franchising, LLC*, Meade formed a corporation called Dasoda to operate a Kiddie Academy franchise.  501 F. App'x 106, 107 (3d Cir. 2012). That corporation and the defendant executed a franchise agreement.  *Id.*  After Dasoda's fortunes faltered, Meade sued Kiddie Academy.  *Id.*  Kiddie Academy moved to dismiss, arguing that Meade could not personally seek redress for harm suffered by Dasoda.  *Id.* at 108.  The Third Circuit agreed that Meade did not have standing.  *Id.*  The *Meade* court stated "that, absent a direct individual injury, the president and principal shareholder of a corporation lacks standing to sue for an injury to the corporation."  *Id.*  This is true even where a plaintiff-shareholder faces personal risk of pecuniary harm if her corporation were to suffer harm and where the corporation has only a single shareholder.  *Id.* (citing and quoting *Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987)).  The court in *Meade* ruled that because the plaintiff's "claims all involved injuries to Dasoda stemming from the franchise agreement between Dasoda and Kiddie Academy, and because Meade did not allege that the Kiddie Academy Defendants took any actions against him in his individual capacity, he did not have standing to sue for injuries sustained by Dasoda."  *Id.*

In light of *Meade*, Jaynes lacks standing to bring claims on behalf of HR.  However, Plaintiffs also correctly note that Exhibits 3 and 4 seemingly show ownership, ownership percentage, contributions, and money due to or owing from Jaynes personally.  These documents were prepared by Defendants.  Thus, Plaintiffs point to evidence demonstrating that Jaynes personally invested in the Property.  If Jaynes did so, then she would have standing to assert claims in her individual capacity.  Yet, in light of the Complaint's clear averment that Jaynes invested through HR, Jaynes has not plausibly pled that she also invested individually.  As a result, Defendants' motion is granted on this ground.

6

**B. Henry and Corporate Veil**

Next, Defendants argue that the Court should dismiss all claims against Henry in his personal capacity because Plaintiffs have not pled facts sufficient to pierce the corporate veil.  D. Br. at 8-13.  Plaintiffs counter that the Complaint details individual acts and statements on Henry's part.  Opp'n at 2 (citing Compl. ¶¶ 9, 10, 13-37).  They also point to the email exchange attached as Exhibit 1, which they represent establishes that Henry did not invest in the Property through Consortium.  Opp'n at 2.

In New Jersey,[4] courts consider the following factors to determine whether the corporate veil should be pierced: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder."  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001); *see also Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498 (N.J. Super. Ct. App. Div. 2006).  At the motion to dismiss stage, a plaintiff "must plead specific facts with respect to how the affiliated entities and individuals allegedly controlled or dominated [the defendant]." *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 427 (D.N.J. 2019) (refusing to pierce the veil because even assuming alleged transfers constituted a disregard of corporate formalities, the plaintiff otherwise failed to demonstrate the presence any of the other factors relevant to a veil-piercing analysis).

---

[4] Defendants cite to New Jersey law, D. Br. at 8, but fail to conduct a choice of law analysis. Plaintiffs cite no law.  As a result, the Court refers to New Jersey law here, but the Court has not determined that New Jersey law will ultimately be applicable.

Plaintiffs do not address the pertinent factors as to piercing the corporate veil.  In fact, Plaintiffs do not cite any legal authority at all.  And the Complaint falls woefully short of plausibly alleging facts to support a piercing of the corporate veil.

Plaintiffs instead rely heavily on Henry's statement in Exhibit 1: "[s]o that we are clear [t]here is no real investment for Consortium needed."  Exhibit 1 at 1.  Henry made this statement in what appears to be an email accompanying a financial analysis of the Property.  *See id.*  Thus, Plaintiffs have again pointed to evidence that arguably supports an allegation that Henry invested in his individual capacity.  However, like the standing issue, this position is belied by Paragraph 12 of the Complaint, which alleges Henry made his investment in the Property through Consortium.  Compl. ¶ 12.  As a result, Plaintiffs do not plausibly plead that Henry is individually liable.  Defendants' motion is granted on this ground.

### C. Fraud and Punitive Damages

Finally, Defendants argue that Plaintiffs have not stated a claim for fraud and that any request for punitive damages should be stricken.  D. Br. at 13-23.  In support, Defendants make three arguments: the economic loss doctrine bars Plaintiffs' fraud claim, Plaintiffs have not alleged fraud with the particularity required by Federal Rule of Civil Procedure 9(b), and Plaintiffs have not alleged facts to support all of the elements of fraud.  *Id.* at 14-23.

In their Opposition to the motion, Plaintiffs clarify that the Defendants' fraud was not the failure to produce reports, but the production of false reports.  Opp'n at 3-4.  They argue that Exhibits 3 and 4 embody the fraud, as one document shows money is due to Plaintiffs while the other shows money is due from Plaintiffs.  *Id.* at 3.  They reason that since both statements cannot be accurate, one, or both, of them must be fraudulent.  *Id.* at 3-4.  Again, Plaintiffs cite no authority to support their arguments.

Here, the Complaint does not plausibly allege that Plaintiffs relied on Defendants' alleged misrepresentations.  Under New Jersey law,[5] common law fraud has five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997).  Although the Complaint alleges reasonable reliance, Compl. ¶ 41, it does so only in a perfunctory manner.  Formulaic recitations of the elements of fraud do not suffice.  *Twombly*, 550 U.S. at 555.  Plaintiffs also fail to sufficiently allege that they suffered harm based on the fraud.  *Cf.* Compl. ¶ 43.  While Plaintiffs explain their fraud theory in their brief, they fail to adequately allege it in their Complaint.[6]

Turning to the economic loss doctrine, the doctrine "prohibits the recovery in a tort action of economic losses arising out of a breach of contract."  *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 150 n.2 (N.J. 2020).  "Thus, 'whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties.'"  *Borough of Edgewater v. Waterside Constr. LLC*, No. 14-5060, 2021 WL 4059850, at *5 (D.N.J. Sept. 3, 2021) (quoting *Chen v. HD Dimension Corp.*, No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010)).  In other words, a court is to consider whether "a defendant breached a 'duty owed to the plaintiff that is independent of the duties that arose under the contract,'" in which case "the economic loss doctrine does not apply."  *G & F Graphic Servs., Inc. v. Graphic*

---

[5] Defendants again cite New Jersey law without performing a choice-of-law analysis.  D. Br. at 14.  And Plaintiffs again fail to cite to any authority.  The Court again refers to New Jersey law, but again notes that it has not made a final determination as to the applicable law.

[6] To be clear, the Court is not ruling that Plaintiffs' fraud theory is plausible.  While the differences between Exhibits 3 and 4 could potentially be indicative of fraud, they could also reflect a mistake, negligence, or correction.  Plaintiffs need to include more factual allegations to meet the Rule 9(b) standard.

*Innovators, Inc.*, 18 F. Supp. 3d 583, 589 (D.N.J. 2014) (quoting *Satiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002)).  As a result, courts distinguish between claims of fraud in the inducement of the contract and fraud in its performance.  *Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 298 (D.N.J. 2007).  Claims of fraud in the inducement are not barred by the economic loss doctrine, while claims of fraud in the performance are barred.  *Id.*

Plaintiffs do not allege facts to support a fraud in the inducement claim.  Instead, Plaintiffs' fraud claim appears to be that Defendants failed to produce accurate reports as required by the parties' agreement.  In other words, Plaintiffs' fraud claim pertains to the performance of a contract, which is barred by the economic loss doctrine.  *See, e.g.*, *Ross*, 494 F. Supp. 2d at 298 (finding that because the defendants' alleged misrepresentations were made during the performance of the agreement, the plaintiffs could not proceed with a claim of common law fraud); *see also Vukovich v. Haifa, Inc.*, No. 03-737, 2007 WL 655597, at *8 (D.N.J. Feb. 27, 2007). ("Plaintiff's claims for fraud that arose during the performance of the contract are barred by the economic loss doctrine.").  Accordingly, the Court also dismisses Plaintiffs' fraud claim based on the economic loss doctrine.

Plaintiffs' request for punitive damages is likewise dismissed to extent that it is premised on their fraud claim.

## IV.    CONCLUSION

For the reasons stated above, the motion is granted.  An appropriate Order accompanies this Opinion.

Dated: February 3, 2022

John Michael Vazquez, U.S.D.J.